## UNITED STATES v. INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION (CIO) et al.

Civ. No. 28123–H.

District Court, N. D. California.

July 2, 1948.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., Jess H. Rosenberg, of Washington, D. C., and Tobias G. Klinger, of Los Angeles, Cal., for plaintiff.

Brobeck, Phlegar & Harrison and Marion B. Plant, all of San Francisco, Cal., for defendant Waterfront Employers' Ass'n.

Gladstein, Andersen, Resner & Sawyer and Richard Gladstein, all of San Francisco, Cal., for International Longshoremen's & Warehousemen's Union (CIO).

Joseph Abihider and Francis McTernan, both of San Francisco, Cal., for National Marine Engineers Beneficial Ass'n (CIO).

Gladstein, Anderson, Resner & Sawyer and Richard Gladstein, all of San Francisco, Cal., for defendant National Union of Marine Cooks & Stewards (CIO).

Roos & Jennings and Albert Michelson and Leslie L. Roos, all of San Francisco,

Cal., for defendant Pacific Coast Marine Firemen, Oilers, Watertenders & Wipers Ass'n.

Charles P. Scully, of San Francisco, Cal., for defendant International Brotherhood of Electrical Workers.

HARRIS, District Judge.

■ The United States of America filed herein its petition for injunctive relief as against a number of employer associations and union groups, under the provisions of Section 206 et seq.,[1] Labor Management Relations Act, 1947, 29 U.S.C.A. § 176 et seq. A temporary restraining order was duly granted upon ex parte application and thereafter, during the course of the hearings herein referred to, was regularly continued in full force and effect to and including July 4th at the hour of 10:30 o'clock a. m.

The matter came on regularly to be heard on the 21, 22 and 23rd of June, 1948, upon the motion for preliminary injunction and the court received documentary, as well as oral testimony adduced on behalf of the plaintiff. In addition, affidavits of Harry Bridges and Eddie Tangen were received on behalf of several of the defendant unions. The following witnesses were examined: Lloyd C. Fleming, Pacific Coast Director, United States Maritime Commission; Admiral Oldendorf, United States Navy; Melvin A. Ostrom, General Superintendent of Mails; H. P. McCoy, Director of Office of Domestic Commerce, United States Department of Commerce; Frank Foisie, President Waterfront Employers' Association; John B. Bryan, President Pacific American Ship Owners.

Thereafter, the court heard extensive arguments of counsel and the matter was submitted for decision. The testimony adduced, as well as the affidavits in support

---

[1] Section 209(b), 29 U.S.C.A. § 179(b). "Upon the issuance of (The District Court Injunction), the President shall reconvene the board of inquiry which has previously reported with respect to the dispute. At the end of a sixty-day period (unless the dispute has been settled by that time), the board of inquiry shall report to the President the current position of the parties * * *. The National Labor Relations Board, within the suc-

ceeding fifteen days, shall take a secret ballot of the employees * * * on the question of whether they wish to accept the final offer of settlement made by their employer as stated by him and shall certify the results thereof to the Attorney General within five days thereafter." (In other words, the injunction remains effective for a maximum period of 80 days.)

of the petition, leave no room for doubt, and the Court finds, that the threatened strike, if permitted to occur, will imperil the national health and safety. As illustrative, the testimony shows, in part:

"* * * The Hawaiian Islands and Alaska are completely dependent upon a constant flow of food and the essentials of life to those territories." Lloyd Fleming, Tr. p. 85, 1. 19–21.

"* * * From January to March, 1948, the Alaska shipping out-bound—there was shipped from the primary Puget Sound ports 94,654 long tons per month. The inbound freight is not available. The Hawaiian service in-bound freight was 248,-904 long tons—outbound, 466,969 long tons." Lloyd Fleming, Tr. P. 83, 1. 16–21.

"A * * * In connection with (the ECA program) we have a very definite picture in regard to Japan, whereby there is constantly required a flow of food and essential supplies to the occupied area in Japan and to our troops quartered there and their dependents, and likewise to the Philippine Islands." Lloyd Fleming, Tr. p. 85, 1. 13–17.

"* * * A great many of (the) garrisons in the smaller islands are small and would not require a full ship's cargo so that in supplying some of them they only take partial space on a leased vessel. If that vessel didn't sail, the boys in that island wouldn't eat. So we would be forced to either withdraw personnel or make some other provision, which I don't know would be, because we are already stretching our cargo ships as far as we can." Admiral Oldendorf, Tr. p. 97, 1. 13–20.

"* * * About 90% of the material for Army forces overseas, aside from petroleum products, are carried in merchant vessels that are dependent upon civilian crews." Admiral Oldendorf, Tr. p. 97-98, 1. 24, 25, and 1.

It is clear from the foregoing that such threatened strike or lockout affects a substantial part of the maritime industry, which is an industry engaged in trade, commerce, transportation, transmission and communication among the several states and with foreign nations.

Certain of the defendants contend that the provisions of the Act under discussion offend the First, Fifth and Thirteenth Amendments to the Constitution. The arguments on this phase, in the light of the factual setting, are not convincing.[2] Congress designed the sections under attack to cope with "national emergencies." If the strike threat is carried out, such an emergency will inevitably follow, and there is a clear and imminent danger to the national health and safety.

The basic problem transcends the ordinary employer-employee dispute wherein private, personal and individual rights are solely involved. The United States of America, plaintiff herein, represents some 140,000,000 Americans whose welfare under the self-same Constitution cannot be ignored.

Also, recognition must be given to the vital and immediate obligations assumed in foreign countries, as well as the undertakings with respect to American military personnel overseas, adverted to in the foregoing testimony.

The Federal Mediation and Conciliation Service has rendered an interim report. Immediately upon the conclusion of the hearings before this court the Service went into conference and negotiations with the respective factions. It is demonstrated from the report that constructive results have been obtained in the brief period of time thus far alloted and accorded them. It is not for the court to make predictions at this stage as to what may or may not be accomplished in the ensuing statutory period, during which time the President of the United States shall have reconvened the Board of Inquiry (Sec. 209(b), 29 U.S.C.A. § 179(b), and the Fed-

---

2 The contentions in this respect advanced by defendants have been disposed of: Texas & New Orleans Railroad Co. v. Brotherhood of Railway Clerks, 281 U.S. 548, 50 S.Ed. 427, 74 L.Ed. 1034; Allen Bradley Co. v. Union, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939; Dorchy v. Kansas, 272 U.S. 306, 47 S.Ct. 86, 71 L.Ed. 248; United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884.

eral Mediation and Conciliation Service shall have undertaken the performance of its functions and duties. Sec. 203(a), 29 U.S.C.A. § 173(a).

No court can be prophetic with regard to the effect that the machinery set up under the Act may have on bringing about a final accord and adjustment. Suffice it to say that the United States District Courts are now authorized by the plain mandate of Congress to order the parties to maintain the status quo for the full statutory period of time (80 days), particularly under the circumstances such as have been shown to exist in the case at bar.

The court is satisfied that the granting of the injunction is not an idle, impotent, judicial act. During the course of the hearings, it became apparent that the crux of the problem centered around the hiring hall issue. The court is convinced that there was and is an area of agreement on this phase, as well as all others. During the presentation, the following discussions occurred:

"Mr. Gladstein (representing the IL-WU): During the recess I talked with the other attorneys representing the unions in the case, and made the suggestion that, in view of the rulings that have been made, it seems somewhat pointless for us to present any extended case addressed to the factual situation before the court; that the important thing to do would be to start the ball rolling on getting negotiations and mediation to see whether the parties could get together or not.

"I told Mr. Rosenberg, he being the optimist, as he expressed himself on occasions, I was perfectly willing to adopt that attitude and recommend to my clients that we do that.

"I am authorized to say that if the question of the hiring hall, which, as you have said, is the nub of the problem as far as the operators are concerned—if that can be disposed of between the parties by maintaining the status quo and testing the question legally, on all other issues that we have in dispute with the operators, we will negotiate, we will mediate, and if we can't come to an agreement we will arbitrate every single one of these questions and have no stoppage whatsoever. That is speaking for the unions I represent, and I think that is true of the others, although I will let them speak for themselves." Tr. p. 350, 1. 24; p. 351, 1. 21.

"Mr. Plant (spokesman for all employer groups): * * * Bear in mind that we do not propose, and never have proposed, the elimination of the hiring hall, either the longshoremen's hiring hall or the hiring halls maintained by other unions.

"In the case of the longshoremen's hiring hall, we have proposed its continuance. The ony change we have proposed relative to that hiring is that the dispatchers who control the assigning of men to jobs be appointed by an impartial administrator selected by the Federal Mediation and Conciliation Service instead of being elected by the union." Tr. p. 394, 1. 16–25.

No doubt, through the medium of the National Labor Relations Board a prompt decision may be obtained from a reviewing court on this or any irreconcilable legal issue. As all counsel agree that they will abide the determination of the courts, it seems expedient and proper that all of the agencies charged with the responsibility of administering the Act lend their aid to the end that an early and effective determination be reached. In the light of the future pronouncements by the Supreme Court of the United States concerning the Act, any collective bargaining agreements entered into by the parties may well be the subject hereafter of alteration, revision and modification.

Many other issues were advanced in the course of the arguments. All of the respective problems are properly within the realm of collective bargaining. Under the clear mandate of the Act this court is obliged to pass upon and find only that the national health and safety are imperiled by a threatened strike or lockout. The court has so found.

In accordance with the foregoing,

It is ordered that the several motions to dismiss be, and they are hereby denied.

It is further ordered that an Injunction issue forthwith as prayed. In compliance with Section 209(b) the 80 day period will run from June 14, 1948, the date on which this court issued its original temporary restraining order.

Findings of Fact and Conclusions of Law are being filed herein concurrent with the within order.

### Preliminary Injunction.

This cause having come on for hearing on application of the plaintiff for a preliminary injunction as prayed for in its complaint, and pursuant to the orders of the Court entered June 14, 1948 and June 23, 1948, and having heard and considered all the evidence submitted herein, both oral and documentary, and having considered the verified complaint, together with the affidavits and exhibits submitted in support of the motion for a temporary restraining order, and on the pleadings of defendants and the affidavits in opposition, and on the entire record, proceedings, briefs and argument of counsel, and the Court being duly advised in the premises, finds as follows:

### Findings of Fact.

1. (a) On June 3, 1948 the President of the United States, acting under the provisions of Section 206 of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 176 (hereinafter referred to as the Act), issued Executive Order 9964 whereby he created a Board of Inquiry to inquire into and report on the issues involved in certain labor disputes in the maritime industry of the United States including disputes on the Pacific Coast between certain employers, shipowners or operators who were represented in collective bargaining conferences by the Waterfront Employers Association of the Pacific Coast, the Pacific American Shipowners Association or the Shipowners Association of the Pacific, and certain of their employees represented by certain labor unions.

(b) In said Executive Order, the President expressed the opinion that such disputes threatened to result in strikes or lockouts affecting a substantial part of the maritime industry, which he described as an industry engaged in trade, commerce, transportation, transmission, or communication among the several states and with foreign nations and that such strikes or lockouts, if permitted to occur, will imperil the national health and safety.

2. The Board of Inquiry so created by the President inquired into the issues involved in the disputes and made its written report to the President on June 11, 1948. Such report included a statement of the facts with reference to the disputes, including the several parties' statements of their position, but contained no recommendation. After receipt and full consideration of the report, the President, acting under Section 208 of the Act, 29 U.S.C. A. § 178, directed the Attorney General of the United States to institute this action on the part of the United States of America for an injunction against the occurrence of the threatened strikes or lockouts and for other appropriate relief.

3. Thereafter, on June 14, 1948, the United States of America brought a suit against the parties involved in the disputes by the filing of a verified complaint. Said complaint prays that this Court enter its order enjoining defendants, and each of them, and their officers, agents, servants and employees, and all persons in active concert or participation with them from encouraging, ordering, permitting, engaging in or taking any part in strikes or lockouts in the maritime industry of the United States, or from in any manner interfering with or affecting the orderly continuance of work in said industry, or from making any changes in the wages, pay, hours, terms or conditions of employment, or in the hire or tenure of employment in the said maritime industry other than by agreement of all affected parties, or from taking any action which would interfere with the Court's jurisdiction, or which would impair, obstruct or render fruitless the determination of this case by the Court; that temporary injunctive relief be granted, and for other appropriate relief, all as more fully set forth in the complaint.

4. Upon the filing of the verified complaint, and upon plaintiff's application, this Court, at 10:30 o'clock a. m. on June 14, 1948, issued a temporary restraining order as prayed for by plaintiff, based upon the

facts alleged in the complaint and upon affidavits and exhibits filed in support of the application for the restraining order. The restraining order by its terms provided that it would expire at 10:30 o'clock a. m. on June 24, 1948 unless extended for good cause shown. Such restraining order was on June 23, 1948, for good cause shown, extended by the Court to 10:30 o'clock a. m. on July 4, 1948.

5. True and correct copies of the verified complaint, affidavits and exhibits annexed thereto, and of the temporary restraining order were duly published and served upon the defendants named in the caption hereof, as appears fully in the returns of service on file in this action.

6. Opposing affidavits, motions to dismiss the complaint, and for other relief on behalf of certain of the defendants herein have been filed in this cause, as more fully appears from the instant record.

7. (a) This action was instituted under the Labor Management Relations Act, 1947, and pursuant to the provisions of Section 208 thereof.

(b) The statutory provisions of Section 208 of the Act, and all requirements therein contained, were duly carried out both prior to and in the institution of this suit by the United States of America.

8. (a) Prior to the institution of this suit certain collective bargaining agreements were in force as between various of the defendant employers and employer groups and various of the defendant labor unions. Said agreements, either by their terms provided for their expiration on or about June 15, 1948, or contained clauses permitting the respective parties to seek to modify the agreements as of or about June 15, 1948, provided prior timely notices were given, which notices had in fact been given as provided by the agreements.

(b) As of June 14, 1948 the parties had not succeeded, nor have they yet succeeded as of this date, in reaching an accord respecting new collective bargaining agreements or modifications of prior agreements, nor in making any interim arrangements which would assure the orderly continuance of work.

(c) As a consequence thereof there existed as of June 14, 1948 threatened strikes or lockouts as between the defendants herein which would result in a virtually complete cessation of work in the maritime industry on the Pacific Coast. Such threatened strikes or lockouts, with the resultant cessation of work, continue to exist as of the date hereof unless restrained by order of this Court.

9. The threatened strikes or lockouts described above affect a substantial part of the maritime industry, which is an industry engaged in trade, commerce, transportation, transmission, and communication among the several states and with foreign nations.

10. The threatened strikes or lockouts, if permitted to occur, will imperil the national health and safety.

11. The threatened strikes or lockouts, if permitted to occur, will cause irreparable injury to the United States of America.

Conclusions of Law

1. This Court has jurisdiction over the parties hereto and of the subject matter of this suit.

2. The National Emergencies provisions of the Labor Management Relations Act, 1947, namely sections 206–210 thereof, 29 U.S.C.A., §§ 176–180, are in all respects valid and constitutional.

3. All of the requirements established by the aforesaid provisions of said Act have been complied with by plaintiff herein.

4. The threatened strikes or lockouts, if permitted to occur, will cause irreparable injury to the United States of America, for which the United States of America has no adequate remedy at law.

5. Plaintiff is entitled to the relief prayed for.

Wherefore, it is by the Court this 2nd day of July, 1948,

Ordered, that the defendants, and each of them, and their officers, agents, servants and employees, and all persons in active concert or participation with them, be and they are hereby enjoined pending the final determination of this cause by the Court from encouraging, ordering, permitting, engaging in or taking any part in threatened

strikes or lockouts in the maritime industry of the United States, or from in any manner interfering with or affecting the orderly continuance of work in said industry, or from making any changes in the wages, pay, hours, terms and conditions of employment or in the hire or tenure of employment in the said maritime industry other than by agreement of all affected parties, or from taking any action which would interfere with this Court's jurisdiction or which would impair, obstruct, or render fruitless the determination of this cause by the the Court;

And it is further ordered that the defendants, and each of them, engage in collective bargaining in good faith for the purpose of resolving their disputes, as contemplated by the Labor Management Relations Act, 1947;

And it is further ordered that this preliminary injunction be and remain in full force and effect until final hearing of this cause and until further order of this Court.