**UNITED STATES of America,**
**Plaintiff,**

**v.**

**The AVCO CORPORATION, LYCOMING DIVISION, STRATFORD, CONNECTICUT, a Delaware Corporation; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO; Local 376, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO; Local 1010, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO, Defendants.**

Civ. No. 11917.

United States District Court
D. Connecticut.

June 9, 1967.

Carl Eardley, Atty., Dept. of Justice, Washington, D. C. (Ramsey Clark, Atty. Gen. of the United States, Barefoot Sanders, Asst. Atty. Gen., Harland F. Leathers, Leslie A. Nicholson, Attys., Dept. of Justice, Washington, D. C., Jon O. Newman, U. S. Atty., Hartford, Conn. and Robert D. Glass, Asst. U. S. Atty., New Haven, Conn., on the brief) for plaintiff the United States.

Warren G. Sullivan, of Naphin, Sullivan & Banta, Chicago, Ill., for defendant The Avco Corporation.

Stephen I. Schlossberg, Detroit, Mich., for defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO.

Edward G. Burstein, Bridgeport, Conn., for defendant Local 1010, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO.

Benjamin Rubenstein, New York City, for defendant Local 376, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO.

TIMBERS, Chief Judge.

## PRIOR PROCEEDINGS

The President of the United States on April 15, 1967, acting pursuant to authority granted to him by the Congress of the United States,[1] issued an Executive Order [2] declaring that a threatened strike by employees engaged in the manufacture of military aircraft engines and spare parts for such engines at the Lycoming Division plant of The Avco Corporation at Stratford, Connecticut, if permitted to occur or continue, would, in the opinion of the President, imperil the national safety.

By the same Executive Order,[3] the President on April 15, 1967 appointed a Board of Inquiry to inquire into the issues involved in the labor dispute and directed the Board to report to the President on or before April 16, 1967. The Board held a hearing at Stratford on April 15, 1967, after which it submitted a written report [4] on the same day to the President expressing its view that many issues between labor and management remained unresolved and that settlement of the dispute would require difficult and extended negotiations.

On April 16, 1967, Local 1010 commenced a strike at the Avco plant at Stratford. Local 376 threatened to commence a strike at the same plant on April 23, 1967.

Upon receipt of the Board's report, the President on April 16, 1967 directed the Attorney General of the United States [5]

---

1. Labor-Management Relations Act of 1947 (hereinafter the "Act"), § 206, 29 U.S.C. § 176 (1964).

2. The President's Executive Order No. 11344 of April 15, 1967 is as follows:

"EXECUTIVE ORDER NO. 11344

CREATING A BOARD OF INQUIRY TO REPORT ON A LABOR DISPUTE AFFECTING THE MILITARY AIRCRAFT INDUSTRY AND THE MILITARY AIRCRAFT ENGINE INDUSTRY OF THE UNITED STATES

WHEREAS, there exists a labor dispute between AVCO Corporation, a Delaware corporation, and certain of its employees at the Lycoming Division plant, Stratford, Connecticut, represented by International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, and Locals 376 and 1010 thereof; and

WHEREAS, such dispute threatens to result in a strike affecting a substantial part of an industry or industries of the United States engaged in trade, commerce, transportation, transmission, or communication among the several States or with foreign nations, or engaged in the production of goods for commerce, which strike, if permitted to occur or continue, would, in my opinion, imperil the national safety;

NOW, THEREFORE, by virtue of the authority vested in me by Section 206 of the Labor Management Relations Act of 1947 (61 Stat. 155; 29

U.S.C. 176), I hereby create a Board of Inquiry, consisting of Mr. Leo C. Brown, Chairman, Mr. James C. Hill and Mr. Clyde W. Summers, whom I appoint to inquire into the issues involved in this dispute.

The Board shall have powers and duties as set forth in Title II of such Act. The Board shall report to the President in accordance with the provisions of Section 206 of such Act on or before April 16, 1967.

Upon the submission of its report, the Board shall continue in existence to perform such other functions as may be required under such Act.

LYNDON B. JOHNSON
The White House
April 15, 1967"

3. Supra note 2.

4. Plaintiff's Ex. 1.

5. The President's letter of April 16, 1967 to the Attorney General is as follows:
"THE WHITE HOUSE
April 16, 1967

Dear Mr. Attorney General:

On April 15, 1967, by virtue of the authority vested in me by Section 206 of the Labor Management Relations Act of 1947 (29 U.S.C. 176), I issued Executive Order No. 11344, creating a Board of Inquiry to inquire into the issues involved in a labor dispute between the AVCO Corporation and certain of its employees represented by International Union, United Automobile, Aerospace and Agricultural Implement

to petition, in the name of the United States, any United States district court having jurisdiction to enjoin the strike.[6]

The instant action accordingly was commenced pursuant to the national emergency provisions of the Act[7] on April 17, 1967 in the United States District Court for the District of Connecticut by the filing of a verified complaint by the Attorney General on behalf of the United States, against the defendants The Avco Corporation and the named unions, seeking injunctive relief. Simultaneously with the filing of the complaint, the United States filed also an application for a temporary restraining order and a motion for a preliminary injunction.

Following notice to all parties and a hearing in open court on April 17, 1967, the Court on the same day issued a temporary restraining order from the bench.[8] Eight days later, upon notice to all parties and after a full hearing in open court on April 25, 1967, the Court on the same day issued a preliminary injunction from the bench.[9]

There is no dispute with respect to the material facts or the conclusions of law hereinafter set forth. Neither the company nor the unions[10] opposed the preliminary injunction. All parties stipulated[11] that Cyrus R. Vance, Deputy Secretary of Defense, if called to testify at the preliminary injunction hearing, would testify in accordance with his affidavit,[12] sworn to April 16, 1967, attached to the complaint.

Pursuant to Rule 52(a), Fed.R.Civ.P., accordingly, the Court makes the following findings of fact and conclusions of law which, together with the foregoing statement of prior proceedings herein, constitute the basis for the preliminary injunction heretofore entered on April 25, 1967.

## FINDINGS OF FACT

1. The Avco Corporation, Lycoming Division, Stratford, Connecticut (here-

---

Workers of America, AFL-CIO, and Locals 376 and 1010 thereof.

On April 16, 1967, I received a report of the Board in the matter. I understand you have a copy of that report.

This unresolved labor dispute has resulted in a strike at the Lycoming Division plant of the AVCO Corporation at Stratford, Connecticut, which, in my opinion, affects a substantial part of the military aircraft industry and military aircraft engine industry of the United States, each of which industries is engaged in trade, commerce, transportation, transmission, or communication among the several States or with foreign nations, or engaged in the production of goods for commerce, and which strike, if permitted to continue, will imperil the national safety.

Therefore, in order to remove a peril to the national safety and to maintain and continue trade, commerce, transportation, transmission, or communication among the several States or with foreign nations, and production of goods for commerce, I direct you, pursuant to the provisions of Section 208 of the Labor Management Relations Act of 1947, to petition in the name of the United States any district court of the United States having jurisdiction of the

parties to enjoin such strike and for such other relief as may in your judgment be necessary or appropriate.

 Sincerely,
 LYNDON B. JOHNSON

The Honorable
 The Attorney General"

6. Act, § 208(a), 29 U.S.C. § 178(a) (1964).

7. Act, §§ 206–210, 29 U.S.C. §§ 176–180 (1964).

8. Rule 65(b), Fed.R.Civ.P. A copy of the temporary restraining order is appended hereto.

9. Act, § 208(a), 29 U.S.C. § 178(a) (1964). A copy of the preliminary injunction is appended hereto.

10. Counsel for one of the unions expressed "some reservations, which are of a philosophical and social nature, against the use of the law" (Tr. of April 25, 1967 preliminary injunction hearing, p. 57). No facts were disputed and no legal objection to the injunction was interposed.

11. Tr. of April 17, 1967 temporary restraining order hearing, p. 45; Tr. of April 25, 1967 preliminary injunction hearing, p. 54.

12. Plaintiff's Ex. 2.

inafter "employer"), is a Delaware corporation and is doing business in the District of Connecticut.

2. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, and Locals 376 and 1010 thereof (hereinafter "unions"), are non-incorporated organizations for collective bargaining purposes representing, inter alia, employees in the military aircraft and military aircraft engine industries; such unions are represented by duly authorized officers and agents in the District of Connecticut.

3. Defendant unions serve as bargaining agents for a majority of employees working for defendant employer.

4. As a result of an existing and unresolved labor dispute between defendant employer and certain of its employees represented by defendant unions, a strike was commenced by Local 1010 on April 16, 1967, and a further strike was threatened to be commenced on April 23, 1967 by Local 376. Such strike and threatened strike, if permitted to occur or to continue, would constitute concerted work stoppage rather than the exercise of individual employees' rights to quit their labor.

5. On April 15, 1967, the President of the United States issued an Executive Order [13] finding that such a strike would affect a substantial part of the military aircraft and military aircraft engine industries, industries engaged in trade, commerce, transportation, transmission or communication among the several states and with foreign nations, or engaged in the production of goods for commerce, and would imperil the national safety; by such Executive Order, the President appointed a Board of Inquiry to inquire into the issues involved in the labor dispute.

6. Thereafter, proceedings ensued as set forth above under the heading "Prior Proceedings" which culminated in the issuance by this Court of a preliminary injunction on April 25, 1967.

7. The testimony of Deputy Secretary of Defense Cyrus R. Vance establishes that a strike at the Lycoming Division plant of The Avco Corporation at Stratford, Connecticut, would affect a substantial part of the military aircraft and military aircraft engine industries of the United States, each of which industries is engaged in trade, commerce, transportation, transmission and communication among the several states and with foreign nations and in the production of goods for commerce, and that such a strike, if permitted to occur or continue, would imperil the national safety because:

(a) The Stratford plant is the sole producer of the T-53 aircraft engine, of many vital spare parts for such engines, and is also responsible for the major portion of overhaul work done on such engines. The T-53 engine powers the "Huey" group of helicopters manufactured by the Bell Helicopter Company, Fort Worth, Texas; these helicopters fly a major share of all American helicopter missions in the current combat operations in Southeast Asia, transporting troops, giving protective fire, and evacuating the wounded. Another version of the T-53 engine also powers the OV-1 (MOHAWK) airplane, manufactured by the Grumman Aircraft Corporation, Bethpage, New York, and used constantly in Southeast Asian combat operations for critical reconnaissance and surveillance missions. Cessation of production by the Stratford plant of these engines and spare parts would seriously impair the effectiveness of our military operations in Southeast Asia; at least 18 months would be required to develop and qualify another producer of such engines.

(b) The Stratford plant also is the sole producer of the T-55 aircraft engine, of many vital spare parts for such engines, and is also responsible for the major portion of overhaul work done on such engines. The T-55 engine powers the CH-47 (CHINOOK) heli-

13. Supra note 2.

copter, a medium transport helicopter manufactured by the Vertol Division, Boeing Company, Morton, Pennsylvania; these helicopters are in constant use in Southeast Asian combat operations, flying virtually all helicopter missions involving transport of artillery and ammunition, heavy equipment, materiel and supplies for combat units, and recovery of downed aircraft. Cessation of production by the Stratford plant of these engines and spare parts would seriously impair the effectiveness of our military operations in Southeast Asia; at least 18 months would be required to develop and qualify another producer of such engines.

(c) The Stratford plant also is the sole producer of the Constant Speed Drive, an essential component of the A4E (SKYHAWK) airplane manufactured by the Douglas Aircraft Company, Long Beach, California. The A4E is a jet attack airplane used in support of both seaborne and ground operations, and flies a substantial portion of all attack missions in Southeast Asian combat operations. Cessation of production by the Stratford plant of this vital airplane component would seriously impair the effectiveness of our military operations in Southeast Asia; at least 5 months would be required for a substitute producer, if qualified, to attain necessary rates of production.

8. The actual and threatened strikes at the Lycoming Division plant of The Avco Corporation at Stratford, Connecticut, if permitted to occur or continue, would affect a substantial part of the military aircraft and military aircraft engine industries of the United States, each of which industries is engaged in trade, commerce, transportation, transmission and communication among the several states and with foreign nations and in the production of goods for commerce, and would imperil the national safety by causing an irretrievable loss of production of aircraft engines, spare parts for such engines, and other vital items, all essential to the national defense and security of the United States, primarily in connection with presently existing military needs in the combat operations of this country in Southeast Asia.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action and over the parties hereto.

2. This action was properly instituted under the national emergency provisions of the Labor-Management Relations Act of 1947, §§ 206–210, 29 U.S.C. §§ 176–180 (1964). The statutory provisions of §§ 206–208 of the Act, 29 U.S. C. §§ 176–178, and all requirements contained therein, have been duly complied with in all respects by the United States as plaintiff, both prior to and in the commencement of this action.

3. The actual and threatened strikes by defendant unions do not, and would not, constitute an exercise of the rights of individual employees to quit their labor as set forth in § 502 of the Act, 29 U.S.C. § 143.

4. Since the actual and threatened strikes, if permitted to occur or continue, would affect a substantial part of industries engaged in trade, commerce, transportation, transmission and communication among the several states and with foreign nations, or engaged in the production of goods for commerce, and would imperil the national safety by causing irreparable injury to the United States for which there is no adequate remedy at law, plaintiff is entitled to the relief sought, as embodied in this Court's preliminary injunction, issued on April 25, 1967, pursuant to § 208 of the Act, 29 U.S.C. § 178.

5. This Court reserves jurisdiction for all purposes in this action, including the entry of any and all further orders and judgments which may be authorized by law and which may be necessary and appropriate in the public interest.

## OPINION

The President of the United States, who also is the Commander In Chief of the Armed Forces of the United States,[14] acting pursuant to authority granted to him by the Congress of the United States, has declared that the strike and threatened strike by employees engaged in the manufacture of military aircraft engines and spare parts for such engines at the Lycoming Division plant of The Avco Corporation, at Stratford, Connecticut, if permitted to occur or continue, would imperil the national safety.

This Court, after hearing the evidence and the arguments of counsel, first issued a temporary restraining order and thereafter a preliminary injunction enjoining such strike and threatened strike.

The direct connection between the Avco strike and the mortal peril in which this Country finds itself in Vietnam and Southeast Asia is all too obvious. Production of military aircraft engines and parts at Avco must continue without a moment's interruption. The President of the United States has declared that the national safety requires it. This Court has ordered it.

The United States, acting at the direction of the President, has swiftly invoked the national emergency provisions of the statute—in precisely the type of situation contemplated by the Congress in granting such drastic powers to a United States court.[15] The parties to this strike—both labor and management—through their respective counsel have acted with commendable statesmanship in not only not opposing issuance of the injunctive orders of the Court but in promptly and publicly announcing their intention fully to comply with all provisions of the orders of the Court, including the Court's direction to labor and management alike "to engage in free collective bargaining in good faith for the purpose of resolving their dispute and to make every effort to adjust and settle their differences." In short, the Court has ordered that the issues underlying the strike be settled. Both sides have undertaken in good faith to do so.

■ In a departure from the conventional reticence of a federal court to enter the arena of active labor negotiations, this Court, after due consideration and pursuant to its reservation of jurisdiction for all purposes in this case, has decided to, and hereby does, offer its good offices to all parties to this action, including the United States, in an effort to assist and facilitate a prompt settlement of the differences between the parties. Normally, of course, the function of the Court is to adjudicate—not to mediate or arbitrate. Hence the tender of assistance by the Court here is unusual. But this is an unusual case. It is hardly an overstatement that a work stoppage in the production of military aircraft engines and parts at Avco would be more than a strike in the conventional sense—it would indeed be a strike at the jugular vein of the United States and of the free world. The President of the United States has so declared. This Court has so held. Both labor and management having closed ranks to settle the strike, this Court has decided to match such commendable statesmanship by active participation in resolving the dispute, if all parties so desire. As Chief Judge of this Court, I assume full responsibility for this drastic step, representing as it does a sharp departure from normal judicial abstention.

Upon submission of an appropriate stipulation, signed by counsel for all parties, this Court will schedule a conference or conferences in its chambers on the second floor of the historic United States Courthouse at New Haven, looking to a swift settlement of any remaining differences between the parties.

14. U.S. Const. art. II, § 2, cl. 1.

15. See the Appendix to this opinion for citations to other cases in which the national emergency provisions of the Act have been invoked, as well as a recital of certain controlling principles of law which have evolved from judicial construction of the Act.

The Court will remain open 24 hours a day for this purpose.

## APPENDIX

### I

The national emergency provisions of the Labor-Management Relations Act of 1947, §§ 206–210, 29 U.S.C. §§ 176–180 (1964), have been successfully invoked by the United States, in more than a dozen cases during the two decades since enactment of the Act.[16]

### II

 The following controlling principles of law have evolved from judicial construction of the national emergency provisions of the Act:

(1) The Act does not violate the First, Third, Fifth or Thirteenth Amendments to the Constitution.[17]

(2) Unions may be enjoined if they are parties to the dispute which led to the strike even though they did not call a strike and even though some of their employees are not on strike.[18]

16. For example: (1) United States v. Carbide and Carbons Chemical Corp., 21 LRRM 2525 (E.D.Tenn.1948) (threatened strike at Oak Ridge National Laboratory of the Atomic Energy Commission); (2) United States v. International Longshoremen's Union, 78 F.Supp. 710 (N.D. Cal.1948) (strike of West Coast longshoremen); (3) United States v. International Union, United Mine Workers, 77 F.Supp. 563 (D.D.C.1948), aff'd, 177 F. 2d 29 (D.C.Cir. 1948), cert. denied, 338 U.S. 871 (1949) (strike in bituminous coal industry); (4) United States v. American Locomotive Co., 109 F.Supp. 78 (W.D.N.Y.1952), aff'd, 202 F.2d 132 (2 Cir. 1953), cert. denied, 344 U.S. 915 (1953) (strike at single plant producing products for atomic energy industry); (5) United States v. International Longshoremen's Ass'n, 116 F.Supp. 255 (S.D. N.Y.1953) (strike in maritime and maritime terminal industries covering 60,000 waterfront workers in North Atlantic ports from Boston, Mass., to Hampton Roads, Va.); (6) United States v. United Steelworkers, 178 F.Supp. 297 (W.D. Pa.1959), aff'd, 271 F.2d 676 (3 Cir. 1959), aff'd per curiam, 361 U.S. 39 (1959) (strike at steel plants comprising 85% of total national steel production); (7) United States v. National Maritime Union, 196 F.Supp. 374 (S.D. N.Y.1961), aff'd sub nom. United States v. National Marine Engineers' Beneficial Ass'n, 294 F.2d 385 (2 Cir. 1961) (strike in East Coast maritime industry, tying up about half of total U.S. merchant fleet); (8) United States v. Seafarers' International Union of North America, 204 F. Supp. 686 (N.D.Cal.1962), aff'd as modified, 304 F.2d 437 (9 Cir. 1962), cert. denied, 370 U.S. 924 (1962) (strike of West Coast maritime crafts, tying up more than half of U.S. merchant fleet operating from Pacific ports); (9) United States v. International Association of Machinists, Civil No. 62 C 662 (E.D.N. Y.1962) (strike at plant of Republic Aviation Corporation in New York, preventing delivery of tactical fighter aircraft); (10) United States v. Lockheed Aircraft Corporation, Civil No. 52–1575 (S.D.Cal. 1962) (strike affecting production of ballistics missiles and anti-submarine aircraft, and impeding space tests and projects); (11) United States v. International Longshoremen's Ass'n, 246 F.Supp. 849 (S.D.N.Y.1964) (strike affecting longshoremen at Atlantic and Gulf Coast ports); (12) United States v. General Electric Co., et al., Civil No. 3350 (S.D. Ohio 1966) (strike involving the sole producer of jet engines for military fighter aircraft); (13) United States v. Union Carbide Corporation, et al., Civil No. 3344–66 (D.D.C.1966), aff'd sub nom. United Steelworkers of America, AFL-CIO, et al. v. United States, Docket No. 20,665 (D.C.Cir. 1966) (strike involving a single plant which was the major producer of a metal alloy necessary for the production and repair of jet engines for military aircraft known as the F–4, RF–4, and F–104 and a producer of certain essential engine parts for five types of helicopters).

17. United States v. United Steelworkers, supra n. 16; United States v. International Longshoremen's and Warehousemen's Union, supra n. 16; United States v. International Maritime Union, 15 (CCH) Labor Cases, ¶73,870 (1948); United States v. International Union, United Mine Workers, supra n. 16; United States v. American Locomotive Co., supra n. 16.

18. United States v. International Longshoremen's Ass'n, supra n. 16; United States v. International Longshoremen's and Warehousemen's Union, 147 F.Supp. 425 (S.D.N.Y.1956); United States v. National Marine Engineers' Beneficial

(3) The strike to be enjoined need not be industry-wide if, in fact, it imperils the national health or safety.[19]

(4) During the injunction period, the parties continue operations under the terms of the last prior agreement.[20]

(5) A primary purpose of the injunction is to establish a "cooling-off" period and to encourage a peaceful resolution of the labor disputes involved.[21]

(6) The court is required to issue the injunction once there have been established the basic facts that: (1) the strike will affect a substantial portion of industries engaged in trade, commerce, transportation, transmission or communication among the several States, or with foreign nations or which are engaged in the production of goods for commerce; and (2) the strike will, if permitted to occur or continue, imperil the national health or safety.[22]

(7) The scope of judicial inquiry in such injunction proceedings has been delineated by the Supreme Court in United Steelworkers of America v. United States, 361 U.S. 39, 40–41, 43 (1959) as follows:

"The arguments of the parties here and in the lower courts have addressed themselves in considerable part to the propriety of the District Court's exercising its equitable jurisdiction to enjoin the strike in question once the findings set forth above had been made. These arguments have ranged widely into broad issues of national labor policy, the availability of other remedies to the Executive, the effect of a labor injunction on the collective bargaining process, consideration of the conduct of the parties to the labor dispute in their negotiations, and conjecture as to the course of those negotiations in the future. We do not believe that Congress in passing the statute intended that the issuance of injunctions should depend upon judicial inquiries of this nature. Congress was not concerned with the merits of the parties' positions or the conduct of their negotiations. Its basic purpose seems to have been to see that vital production should be resumed or continued for a time while further efforts were made to settle the dispute. To carry out its purposes, Congress carefully surrounded the injunction proceedings with detailed procedural devices and limitations. The public report of a board of inquiry, the exercise of political and executive responsibility personally by the President in directing the commencement of injunction proceedings, the statutory provisions looking toward an adjustment of the dispute during the injunction's pendency, and the limited duration of the injunction, represent a congressional determination of policy factors involved in the difficult problem of national emergency strikes. This congressional determination of the policy factors is of course binding on the courts.

\* \* \* \* \* \*

"The petitioner suggests that a selective reopening of some of the steel mills would suffice to fulfill spe-

---

Ass'n, 292 F.2d 190 (2 Cir. 1961); United States v. National Marine Engineers' Beneficial Ass'n, supra n. 16.

19. United States v. American Locomotive Co., supra n. 16; United States v. International Association of Machinists, supra n. 16; United States v. Lockheed Aircraft Corp., et al., supra n. 16; United Steelworkers of America, et al. v. United States, supra n. 16.

20. United States v. International Longshoremen's Ass'n, supra n. 16; United States v. International Longshoremen's and Warehousemen's Union, 177 F.Supp.

621 (S.D.N.Y.1959); United States v. International Longshoremen's and Warehousemen's Union, supra n. 18; Seafarer's Union v. United States, supra n. 16.

21. United States v. International Longshoremen's Ass'n, supra n. 16; United States v. International Longshoremen's Association, supra n. 16.

22. United States v. United Steelworkers, supra n. 16; United States v. International Longshoremen's Ass'n, supra n. 16; United States v. International Longshoremen's Association, supra n. 16.

cific defense needs. The statute was designed to provide a public remedy in times of emergency; we cannot construe it to require that the United States either formulate a reorganization of the affected industry to satisfy its defense needs without the complete reopening of closed facilities, or demonstrate in court the unfeasibility of such a reorganization. There is no room in the statute for this requirement which the petitioner seeks to impose on the Government."

Hence, as stated in the *Steelworkers* case, supra, the only responsibility which the statute imposes upon the courts in these actions is "the duty of finding, upon the evidence adduced, whether a strike or lock-out meets the statutory conditions of breadth of involvement and peril to the national health or safety." (361 U.S. at 41.)

(8) The courts on several occasions have recognized the necessity of continued production of military materiel. In United States v. International Association of Machinists, et al., Civil No. 62–C–662 (E.D.N.Y.1962), the court enjoined a work stoppage at a single plant of one company which prevented the delivery of a single type aircraft needed for the defense program. Also, in United States v. Lockheed Aircraft Corporation, et al., Civil No. 52–1575 (S.D.Cal. 1962), work stoppages were enjoined at the Lockheed plant which produced ballistics missiles and anti-submarine aircraft.

## TEMPORARY RESTRAINING ORDER

This matter came on to be heard on the 17th day of April, 1967 on the verified complaint of the United States of America and the exhibits and affidavit attached thereto, and upon the plaintiff's application for a temporary restraining order against the defendants, and each of them, and it appearing to the Court that the defendants, to wit: AVCO Corporation, Lycoming Division, Stratford, Connecticut, hereinafter sometimes referred to as the "employer" and the defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO; Local 376, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO; and Local 1010, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, are engaged in an unresolved labor dispute and that such dispute has resulted in a strike affecting a substantial part of the military aircraft and military aircraft engine industries of the United States, which are engaged in trade, transportation, transmission, commerce, or communication among the several States and with foreign nations, and engaged in the production of goods for commerce, and that such strike, if permitted to continue will imperil the national safety; that plaintiff is threatened with irreparable injury for which it has no adequate remedy at law; and it further clearly appearing to the Court, from the verified complaint and the exhibits and affidavit annexed thereto, that immediate and irreparable injury, loss and damage would result to the United States of America before notice could be served on adverse parties as appears from the attached statement pursuant to Rule 65 of the Federal Rules of Civil Procedure and a hearing had on the application of plaintiff for a temporary restraining order.

NOW, THEREFORE, it is by the Court this 17th day of April, 1967, Ordered:

1. That the defendants and each of them and their officers, agents, servants, and employees, and all persons in active concert or participation with them, be and they hereby are restrained (a) from in any manner continuing, encouraging, ordering, aiding, engaging, or taking any part in any strike or lockout at the employer's Stratford, Connecticut plant, and (b) from in any manner interfering with or affecting the orderly continuance of work at said plant and from taking any action which would interfere with this Court's jurisdiction in the premises.

2. That the members of defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO; Local 376, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO; and Local 1010, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, acting in concert, be and they hereby are, restrained from in any manner continuing, encouraging, ordering, aiding, engaging or taking any part in any strike at the employer's Stratford, Connecticut plant, and from in any manner interfering with or affecting the orderly continuance of work in said plant, and from taking any action which would interfere with this Court's jurisdiction in the premises; provided, however, that nothing in this paragraph shall be construed to require an individual employee to render labor or service without his consent nor to make the quitting of his labor or service by an individual employee an illegal act.

3. That the defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO; Local 376, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO; Local 1010, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO; and their respective appropriate officers, agents, servants, and employees, be and they hereby are, directed (a) to instruct immediately all members employed at the employer's Stratford, Connecticut plant, to resume their normal employment, and (b) to take all action which may be necessary to insure that such instructions are carried out.

4. The defendants are directed to engage in free collective bargaining in good faith for the purpose of resolving their dispute and to make every effort to adjust and settle their differences.

5. That this restraining order shall expire at 11:30 a. m., Eastern Standard Time, on April 27, 1967, unless before such time the order is extended for good cause shown, or unless the defendants consent to an extension of the order for a longer period.

6. That plaintiff's motion for preliminary injunction be set down for hearing in this Court on Tuesday, April 25, 1967, at 10:00 a. m., Eastern Standard Time, United States Court House, New Haven, Connecticut.

7. That service of a copy of this order to show cause and temporary restraining order, together with the complaint and all affidavits and papers upon which it is based, shall be served upon the respective defendants on or before 4:00 p. m., April 17, 1967.

## PRELIMINARY INJUNCTION

This cause having come on for hearing on the 25th day of April, 1967, on plaintiff's motion for a preliminary injunction pursuant to Section 208 of the Labor-Management Relations Act, 1947 (29 U.S.C. 178), and the Court having considered the evidence submitted herein, the pleadings, memoranda of law, and arguments of counsel, and the Court having simultaneously herewith made Findings of Fact and Conclusions of Law:

NOW, THEREFORE, it is this 25th day of April, 1967, ORDERED:

(1) That the defendants, and each of them, and their officers, agents, servants. and employees and all persons in active concert or participation with them or any of them be and they hereby are restrained:

(a) From in any manner continuing, encouraging, ordering, aiding, engaging or taking any part in any strike or lockout at the Lycoming Division plant of AVCO Corporation, Stratford, Connecticut; and

(b) From in any manner interfering with or affecting the orderly continuance of work in said plant at the same rates of pay, and other terms and conditions of employment in effect immediately prior to April 16, 1967, with

respect to Local 1010, and April 23, 1967, with respect to Local 376, subject to such modifications thereof as the defendants may agree upon, and from taking any action which would interfere with this Court's jurisdiction in the premises.

(2) That the members of and employees represented by the defendant unions, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, Local 376, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, and Local 1010, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, acting in concert, be and they hereby are, restrained from in any manner continuing, encouraging, ordering, aiding, engaging or taking any part in any strike or lockout at the Lycoming Division plant of AVCO Corporation, Stratford, Connecticut, and from in any manner interfering with or affecting the orderly continuance of work in said plant and from taking any action which would interfere with the Court's jurisdiction in the premises; provided, however, that nothing in this paragraph shall be construed to require an individual employee to render labor or service without his consent, nor to make the quitting of his labor or service by an individual employee an illegal act.

(3) That the defendant unions, listed in paragraph (2) of this order, and their respective appropriate officers, agents, servants and employees be, and they hereby are, directed:

(a) To instruct immediately all members and employees represented by the defendant unions employed at the Lycoming Division plant of AVCO Corporation, Stratford, Connecticut, to continue and/or resume their normal employment;

(b) To give notice forthwith to their members and to employees represented by them of the terms of this order by posting a copy of said order at the respective headquarters of the defendant unions herein, and said posting will be deemed to constitute notice of said order to all members of the respective defendants; and

(c) To take all action which may be necessary to insure that such instructions are carried out.

(4) That the defendants are directed to engage in free collective bargaining in good faith for the purpose of resolving their dispute and to make every effort to adjust and settle their differences.

(5) This injunction shall remain in full force and effect until the further order of this Court.