**In the Matter of Jack Borgenicht, Debtor.**

**Jack BORGENICHT, Appellant,**

**v.**

**CREDITORS' COMMITTEE, Appellee.**

**No. 820, Docket 73–1027.**

United States Court of Appeals, Second Circuit.

Argued May 29, 1973.

Decided May 31, 1973.

Elliot L. Krause, New York City (Leinwand, Maron, Hendler & Krause, New York City), for appellant.

Julius J. Abeson, New York City (Hahn, Hessen, Margolis & Ryan, New York City), for appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

PER CURIAM:

This appeal from an order of the District Court for the Southern District of New York denying a petition to review an order of Referee Babitt raises the question whether a debtor who has been party to a confirmed arrangement under Chapter XI of the Bankruptcy Act may apply for leave to file an application for an extension of time to make payments under § 363 although the court did not retain jurisdiction pursuant to § 368. Although expressing sympathy with the debtor, the referee thought that the statute clearly precluded the relief sought. We agree and can add nothing useful to his excellent opinion. For the convenience of the bench and bar, we annex a copy of the relevant portions of this as an appendix.

Affirmed.

## APPENDIX

Roy Babitt, Referee:

This debtor filed his voluntary petition for an arrangement under the statutory scheme of Chapter XI of the Bankruptcy Act, Section 302 et seq., 11 U.S.C. § 702 et seq., and in particular under Section 322, 11 U.S.C. § 722.[1] That petition was filed on May 7, 1969 and was referred to Referee Loewenthal. It has since been re-referred to me.

On October 9, 1969 the debtor filed his proposed arrangement (or as it has come to be called—his plan) with his creditors.

For purposes of the instant controversy, paragraph 4a of the proposed arrangement provided that the claims of all general unsecured creditors were to be paid in full without interest with 12% in cash to be paid on confirmation

and the balance of 88% to be paid over sixteen "quarter annual installments of $5\frac{1}{2}\%$ each commencing from the date of confirmation." Paragraph 5 of the proposed arrangement secured the creditors by execution by the debtor of mortgages on certain parcels of real property he owned. That paragraph also provided that in the event of default by the debtor or in the event of the debtor's failure to perform any other conditions of the proposal the creditors, in their sole discretion, were to realize upon the security in such manner as they deemed advisable.

That proposed arrangement was ultimately accepted by the debtor's creditors in accordance with the statutory scheme and after the debtor had satisfied the statutory conditions precedent to confirmation, Referee Loewenthal entered an order on July 27, 1970 confirming the debtor's arrangement. Between the entry of Referee Loewenthal's order and now the debtor has paid the 12% in cash and seven of the $5\frac{1}{2}\%$ installments called for by paragraph 4a of the arrangement. For purposes of the instant dispute it is important to note here that the debtor's arrangement did not contain the provision contemplated by Section 357(7) of the Act, 11 U.S.C. § 757(7), whereby this court would have retained jurisdiction "until provisions of the arrangement, after its confirmation, have been performed . . ."

While it might well have been desirable from the debtor's standpoint for this court to have been given the retained jurisdiction of Section 357(7), the fact is that the creditors did not require it of the debtor in his proposal. Indeed in light of the motion which is the subject of this opinion, it is altogether likely that the creditors chose to block efforts by the debtor to include such a provision, for it seems to the court that the creditors are of a mind to pursue whatever remedy they might have without inter-

---

[1]. Section 322 contemplates an original petition while Section 321, 11 U.S.C. § 721, contemplates a Chapter XI petition during an already viable bankruptcy proceeding.

ference by this court.[2]  In any event, for want of the specific conferral of continued jurisdiction in the arrangement, it is plain that Section 368 of the Act, 11 U.S.C. § 768, is of no moment in this controversy.  That section states clearly and unequivocally that the court shall retain jurisdiction "if so provided in the arrangement."

The debtor brought this motion for an order granting the debtor leave to file a modification of his arrangement to provide for an extension of the time within which he might make the balance of the deferred payments.  Simply stated, the debtor asked the opportunity to propose a deferral of the July, 1972 $5\frac{1}{2}\%$ installment until October, 1972 and the balance of such payments to be paid semi-annually thereafter until the remaining balance of some 30% called for by the original proposal shall have been paid.  As a legal basis for the motion, the debtor apparently invokes Section 387 of the Act, 11 U.S.C. § 787, and claims support for such invocation by the retention of jurisdiction which Congress did give to this court but limitedly by Section 369 of the Act, 11 U.S.C. § 769.

The creditors' committee answered and raised two defenses alleging that this court is bereft of power to grant the motion and that accordingly the motion fails to state a claim upon which any relief can be granted.

It is with the utmost reluctance that I must conclude that the creditors' committee's defenses to the motion must be sustained and the motion denied.

Section 387 of the Act, the linchpin of the debtor's motion, speaks to the point.  It does confer post-confirmation power in this court to authorize a debtor to alter or modify the confirmed ar-

rangement by asking his creditors for more time to pay what he has promised them.  The difficulty facing the debtor is that when Congress gave the court this power it did not do so unqualifiedly.  The power was given only if the court had already had the retained jurisdiction contemplated by Section 368.  And Section 368 swiftly and surely states that this court is to retain jurisdiction if it is provided for in the arrangement as authorized by Section 357(7) of the Act.

Sections 368 and 387 must be read together.  Their plain unambiguous language defies their being construed in such way as to give the debtor the opportunity he seeks of asking his creditors to accept his new offer deferring the payments of the 30% or so still due them and to stay their hand from foreclosing the mortgages he gave them to secure compliance with his original proposal.

A problem in statutory construction seriously bothers a court only where there is a contest between probabilities of the meaning of the words of a statute.  See Reflections on Reading Statutes, Felix Frankfurter, The Benjamin N. Cardozo Lecture before the Association of the Bar of the City of New York (March 18, 1947).

Section 387 is a relatively recent enactment, it was enacted by Public Law 85–732 at the Second Session of the 85th Congress in 1958.  While the legislative history, Senate Report 2094, 85th Cong., 2d Sess. (1958), U.S.Code Cong. & Admin.News 1958, p. 3804, does not indicate that Congress was specifically aware of the precise problem raised by this debtor who has faithfully discharged more than $\frac{2}{3}$ of his original commitment, there is enough in the testimony

---

2. Non-conferral of Section 357(7) jurisdiction in no way suggests that this court lacks other powers after confirmation of an arrangement.  See In re Pathe News, Inc., 276 F.Supp. 670 (S.D.N.Y. 1967) ; 9 Collier on Bankruptcy, (14th Ed.) ¶¶ 9.29, 9.30, 1108.  For an early decision before Congress conferred any

power to allow a debtor to modify his plan, see Seedman v. Friedman, 132 F.2d 290 (2d Cir. 1942), where the Court of Appeals characterized this court's role as one of watchful waiting absent conferral of the limited retained jurisdiction the statute then carried.

before the committee to indicate that Congress knowingly pitched the jurisdiction to permit post-confirmation modification only to the instance where the court was specifically given jurisdiction by the original arrangement. After all, Congress might have supposed, the creditors, once having accepted a debtor's offer, should be free to fashion their own recourse after a debtor has left the court. Be that as it may, the legislative history discloses that the main impulse for the legislation was to provide a judicial alternative to bankruptcy liquidation in the event a debtor has not squarely complied with the terms of his offer. But that alternative is available only where the power was specifically reserved to the court in the plan.

By specifically referring to the retained jurisdiction of Section 368, Congress expressed the limits to which it was willing to sanction further judicial control over the continuing dialogue between a debtor and his creditors. Had Congress wished to confer this post-confirmation power on this court in any event it could easily have done so. Congress could easily have conferred the power whether it was the kind specifically granted by Section 368 or generally granted by Section 369. Congress did not see fit to do so and this court cannot rewrite the statute by extending it beyond the thought conveyed by the unambiguous words. The short of it is that the sharply limiting language of Section 387 does not admit of any reading other than that which the words spontaneously yield.

It cannot be denied that this debtor has faithfully complied with the terms of this arrangement in the period since it was confirmed by Referee Loewenthal. The argument on the motion discloses that a piece of the debtor's property in New York City has lately yielded less income than the debtor thought two years ago it would have yielded in order for him to make the necessary installment payments to his creditors. It seems to the court that the creditors could eschew foreclosing on the property to realize the 30% of their payments still due. To foreclose now would be to deny to the debtor the future enhancement of that property where it could serve to continue the rehabilitation process begun when the debtor first invoked the provisions of Chapter XI.

But such equitable restraint must come from the debtor's creditors, for, while we have been reminded again and again that this court applies equitable principles in the exercise of its bankruptcy jurisdiction, Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), Pepper v. Litton, 308 U.S. 295, 305, 60 S.Ct. 238, 84 L.Ed. 281 (1939), there is simply no play in the case at bar for the exercise of such judicial equity power. This serves to emphasize that in this contest I have been called upon, not to determine equities, but to construe a Congressional enactment, processes which unfortunately do not necessarily lead to the same result. Haller v. Esperdy, 397 F.2d 211 (2d Cir. 1968). In short, this court's equitable jurisdiction is not robust enough to amplify a jurisdiction severely limited by the plain language of recent enactment.